UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
TARIQ GIBBONS,

                         Plaintiff,

                    -against-

THE CITY OF NEW YORK,
ERIC BOLGER,
JOSUE MARCELIN,
FRANCISCO PEREZ,
MICHAEL GARCIA,
JOSEPH RUGGIERI,
HENRY ADAMES,
ROBERT JAQUEZ,
JASON VASQUEZ,
U.C. CO244,

                        Defendants.
--------------------------------------------------------------------X

**FIRST AMENDED
COMPLAINT**

Jury Trial
17 CV 9100 (LGS)

        Plaintiff TARIQ GIBBONS by and through his attorneys, Vik Pawar, and Robert Blossner, Esqs., respectfully alleges as follows:

## PRELIMINARY STATEMENT

        1.      Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§1983 and 1988 for violations of his civil rights as secured by statutes and the United States Constitution.

## JURISDICTION

        2.      The action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth, and Fourteenth Amendments to the United States and New York Constitutions.

        3.      Jurisdiction is found upon 28 U.S.C. §§1331 and 1343.

**VENUE**

4.      Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claim arose.

**JURY DEMAND**

5.      Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

**PARTIES**

6.      Plaintiff, an African-American, is a citizen of the United States, and at all relevant times was a resident of the County of Bronx, City and State of New York.

7.      Defendant City of New York (hereinafter "City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. The New York City Police Department ("NYPD") is a non-suable entity and therefore the City is sued on NYPD's behalf.

8.      Defendants ERIC BOLGER ("BOLGER"), JOSUE MARCELIN ("MARCELIN"), FRANCISCO PEREZ ("PEREZ"), MICHAEL GARCIA ("GARCIA"), JOSEPH RUGGIERI ("RUGGIERI"), HENRY ADAMES ("ADAMES"), ROBERT JAQUEZ ("JAQUEZ"), JASON VASQUEZ ("VASQUEZ") and UNDERCOVER CO244 ("U.C.") are members of the NYPD assigned to the Narcotics Bureau of Bronx of the 44th precinct who were involved in a buy and bust operation on July 3, 2015 ("date of incident").

## FACTS

9.      On the date of the incident, at approximately 6 p.m., plaintiff left his home to purchase a drink from a bodega near his home.

10.      After plaintiff purchased his drink, he exited the bodega.

11.      As plaintiff exited the store, he was grabbed by BOLGER, MARCELIN, PEREZ, GARCIA, RUGGIERI, ADAMES, JAQUEZ and VASQUEZ.   and thrown against the wall next to the bodega.

12.      After being thrown against the wall, plaintiff was thrown on the floor and the aforementioned defendants placed their knees on plaintiff's shoulders blades causing him substantial pain, violently yanked his hands behind his back and tightly handcuffed him.

13.      Plaintiff had not committing a violation or a crime and the defendants refused to respond to his inquiry about the arrest.

14.      Plaintiff was then placed in the back of a police van and he waited inside with other individuals who had been arrested around that time.

15.      Plaintiff did not speak or communicate with the individuals and he did not know who these individuals were.

16.      Plaintiff was transported to the 44th precinct and BOLGER, PEREZ and GARCIA processed his arrest.

17.      Plaintiff was not informed about the reasons behind the arrest.

18.      Plaintiff stayed at the 44th precinct for approximately 6 hours before he

was transported to Central Booking.

19.     Plaintiff spent 24 hours in custody before he was released.

## AS AND FOR A FIRST CAUSE OF ACTION
(Unlawful stop, frisk, search, excessive force and seizure)

20.     Plaintiff repeats the foregoing paragraphs as if fully set forth herein.

21.     Plaintiff was lawfully present inside the bodega when he purchased his drink.

22.     Plaintiff had not violated any laws or regulations.

23.     Plaintiff lives in the neighborhood.

24.     Defendants identified in ¶ 11 did not have any reason, cause, probable or otherwise to detain, plaintiff, violently throw him up against the wall and then violently throw him on the ground and search and frisk him.  The use of force was excessive under the circumstances.

25.     Defendants had no reason to then handcuff plaintiff and throw him inside the back of a police van and keep him in custody for nearly 24 hours.

26.     This particular encounter with the police made plaintiff afraid and injured.

27.     Plaintiff was embarrassed because he was arrested in front of his neighbors and friends in this particular incident.

28.     Plaintiff suffered injuries from this particular incident for violations of his rights secured under the Fourth and Fourteenth Amendment of the Constitution.

29.     BOLGER was the arresting officer and PEREZ was the supervisor at the time of this alleged "buy and bust operation."  BOLGER and PEREZ both knew that

plaintiff had not sold any drugs to UC.  Yet, BOLGER arrested plaintiff and PEREZ signed off and approved the arrest.

30.     Plaintiff was subjected to unlawful search and seizure, excessive use of force and deprived of his substantive and procedural due process rights and as a result of this underlying incident, he suffered injuries.

## AS AND FOR A SECOND CAUSE OF ACTION
(Municipal/*Monell* Liability)

31.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

32.     Plaintiff sets forth the City's failure to train or otherwise discipline officers for making unlawful stop, search, frisk and seizures was deliberately indifferent to the rights of individuals like plaintiff and plaintiff suffered injuries.

33.     Plaintiff an African-American male was lawfully present at the premises when the defendant officers stopped, searched and frisked him.  Defendant City has failed to properly train individual defendants as to what constitutes a crime or probable cause to stop, frisk, search and seize a person.

34.     Defendant City through the NYPD has engaged in routinely stopping, frisking and searching minorities without probable cause simply because of their race.

35.     In addition, the widespread lack of training, or disciplining the officers within the NYPD allows officers to walk away with impunity while at the same time causing constitutional injuries to individuals like plaintiff.  Because of the lack of training on the law, individual defendants arrest innocent citizens like plaintiff.

36.     The conduct of the NYPD relating to unlawful stop, frisks and search is not an uncommon event.  The City has faced numerous lawsuits, complaints and notices

that the NYPD engages in this type of behavior but has failed to curtail or address it through discipline or re-training the officers or simply being indifferent to the constitutional rights by retaining the offending officers and hiring more officers that would be susceptible to engaging in unconstitutional conduct because of lack of adequate training.

37.     In fact, Judge Scheindlin in *Floyd v. City of New York,* 813 F.Supp.2d 417, 422, (S.D.N.Y. 2011)[1], noted that "it is clear that the policing policies that the City has implemented over the past decade and a half have led to a dramatic increase in the number of pedestrian stops, to the point of now reaching 'almost 600,000 a year.' There is 'a disturbingly large racial disparity in who is victimized by these practices,' although the precise extent of the disparity and its causes are matters of dispute.  This is not the first time the City of New York has been accused of racial profiling. In particular, a previous lawsuit before this Court, *Daniels v. City of New York,* was resolved through a settlement agreement requiring the City to adopt several remedial measures intended to reduce racial disparities in stops and frisks."

38.     In another decision, the Judge noted that racial disparities "exist in the context of the NYPD's long history of biased stop, question, and frisk activity."

39.     Due to the City's policies, the custom and practice of the NYPD officers and the lack of the City to implement (a) meaningful training materials, (b) adequate disciplinary measures, (c) additional supervision, (d) adequate hiring and retention procedures, when such implementation has been clearly warranted for over a decade, and an utter disregard to the Constitution, the City has been deliberately indifferent to the

---

[1] The *Floyd* decision is attached as Exhibit 1 and is incorporated into this complaint.

rights of its citizens like plaintiff.  The foregoing failure to act or disregard a known occurrence that needed to be rectified, the City instead turned a blind-eye to these unconstitutional practices and was the proximate cause of the injuries suffered by plaintiff.

40.    With respect to the facts in this action, defendant City has failed to adequately informed its police officers through training or command notifications that they need to have probable cause to arrest individuals and cannot simply arrest them because they are minorities.

41.    Plaintiff is an African-American male who had committed no crime or violation.

42.    Defendant officers knew that stopping/frisking and arresting plaintiff and doing so in a violent fashion without any reason or cause would deprive plaintiff of his rights to be free from unreasonable search and seizure.  Yet, defendants ignored these lawful mandates.

43.    As outlined previously, defendant City was fully aware that individual defendants would routinely encounter individuals like plaintiff.  However, defendant City has failed to adequately train defendant officers in what constitutes a crime.  Defendant City's failure to train defendant officers or discipline them for acting contrary to the constitution constitutes deliberate indifference to the rights of individuals such as plaintiff.

44.    As a result, African-American individuals like plaintiff continue to be deprived of their rights under the Constitution.

## AS AND FOR A THIRD CAUSE OF ACTION
(Denial of Right to a Fair Trial)

45.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47.     Defendants UC and BOLGER fabricated probable cause and detained plaintiff.  UC and BOLGER then drafted false police complaint and arrest form stating that plaintiff had sold marijuana to UC.  PEREZ signed off on the false paperwork.

48.     The aforementioned defendants falsified that plaintiff sold marijuana and used that false justification to process plaintiff's arrest.  Plaintiff was handcuffed, strip-searched, finger-printed, had a mug-shot photographed, and sent to central booking as a criminal solely because of defendant UC, BOLGER and PEREZ's falsified police paperwork.

49.     The false and fabricated charge denied plaintiff the right to a fair trial or a hearing at the arraignment.[2]

50.     But for the false statements by defendants, plaintiff would have been free to leave.  The false statements by the defendants gave them "probable cause" to restricted plaintiff's freedom of movement.

51.     As a result of defendants' conduct, plaintiff suffered injuries.

---

[2] It is not uncommon that NYPD officers to submit falsely sworn complaints arresting and prosecuting citizens without probable cause and then committing perjury and/or manufacturing evidence in an effort to initiate criminal prosecutions against individuals like plaintiff.  *See Colon v. City of N.Y.*, No. 09 Civ. 8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009) ("Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration ... there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.").

## AS AND FOR A FOURTH CAUSE OF ACTION
(Supervisory Liability)

52.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     GARCIA and PEREZ were Sergeants who were the supervising officers of the other defendants at the scene at the time of the incident.

54.     GARCIA and PEREZ participated in violating plaintiff's constitutional rights by signing off and approving false police paperwork stating that plaintiff had committed the crimes.

55.     GARCIA and PEREZ failed to intervene when the other defendants were using excessive force on plaintiff.   They also failed to report the other defendants' conduct to the IAB.

56.     PEREZ who was to screen all arrests by BOLGER for legal propriety and adequacy failed to do so or take any corrective actions.

57.     GARCIA and PEREZ were aware that plaintiff was innocent but failed to act on the information or take any remedial actions.  Instead, they ratified BOLGER and UC's paperwork, conduct and failed to intervene to prevent the unlawful seizure and assault on plaintiff.

58.     As a result of the foregoing, GARCIA and PEREZ are liable under the theory of supervisory liability because his actions or lack thereof violated substantive due process rights of plaintiff and caused him injuries.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Failure to Intervene)

59.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     The named individual defendants witnessed the assault on plaintiff.

61.     The individual defendants saw one of their fellow officers use excessive force on plaintiff.

62.     The individual defendants saw that the force was unnecessary and that plaintiff had committed no crime or violation.

63.     The individual defendants despite having an opportunity to intervene and further escalate and prevent the violation of plaintiff's civil rights, simply stood back and do nothing or continued to participate in said violation.

64.     As a failure of the individual defendants to intervene, plaintiff suffered injuries.

**WHEREFORE**, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A) full and fair compensatory damages in an amount to be determined by a jury for the injuries arising from this underlying incident:

(B) punitive damages in an amount to be determined by a jury;

(C) reasonable attorney's fees and the costs, expenses and disbursements of this action; and

(D) such other and further relief as appears just and proper.

Dated: New York, New York
        May 14, 2018

                                        PAWAR LAW GROUP, P.C.
                                        20 Vesey Street, Suite 1210
                                        New York, New York 10007
                                        (212) 571-0805

                                        By:
                                            Vik Pawar, Esq. (VP9101)
                                            Robert Blossner, Esq. (RB0526)
                                            *Attorneys for Plaintiff*